UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA COLE and BEATRICE ROCHE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS, INC.,<br><br>Defendant. | Case No.: 1:22-cv-00892 JLT SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE AND TRANSFERRING THE MATTER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>(Doc. 15) |

Angela Cole and Beatrice Roche allege Quest Diagnostics Incorporated[1] assisted Facebook in intercepting their internet communications with Quest and improperly disclosed patient medical information to Facebook. (*See generally* Doc. 23.) Plaintiffs assert two causes of action against Quest on behalf of a putative class of Quest website users: violation of California Invasion of Privacy Act and violation of California's Confidentiality of Medical Information Act. (*Id*.) Quest seeks transfer of the action to the United States District Court for the District of New Jersey pursuant to a binding forum selection clause and 28 U.S.C. § 1404(a). (*See* Doc. 15.) Plaintiffs oppose the motion, asserting the forum selection clause is inapplicable or, in the alternative, unenforceable. (*See* Doc. 24.) The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and

---

[1] Quest notes it was erroneously sued as Quest Diagnostics, Inc. (Doc. 15 at 6.)

1

General Order 618. For the reasons set forth below, Quest's motion to transfer venue to the District of New Jersey is **GRANTED**.

## I. Background and Allegations

Plaintiffs are California residents who ordered and accessed medical diagnostic tests from Quest by navigating two of its websites: www.questdiagnostics.com ("General Website") and myquest.questdiagnostics.com ("MyQuest"). (Doc. 23 at ¶¶ 1, 4-5.) Upon navigating to the General Website, Plaintiffs were redirected to MyQuest to access their test results, and both created accounts as required to gain such access. (*Id.* at ¶¶ 4-5.) Plaintiffs claim that without their consent, Quest assisted Facebook, a third party, in intercepting their internet communications and medical information while they navigated the websites. (*See id.* at ¶¶ 59, 68.)

Plaintiffs now assert claims against Quest, individually and on behalf of a putative California class of website users, for violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*. (Doc. 23 at ¶¶ 54-73.) Quest filed a motion to transfer venue to the United States District Court for the District of New Jersey on November 22, 2022. (Doc. 15.)[2] Plaintiffs filed an opposition on January 6, 2023, (Doc. 24), to which Quest replied on January 27, 2023. (Doc. 31.)

## II. Legal Standard

"[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)…" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013). In considering a motion to change venue, "[t]he presence of a forum-selection clause…will be a significant factor that figures centrally in the district court's calculus." *Stewart Org. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). This is because a valid forum selection clause constitutes the parties' agreement as to the most proper forum, *Atl. Marine*, 571 U.S. at 63, and

---

[2] Plaintiffs filed their complaint on July 19, 2022. (Doc. 1.) Quest filed the instant motion concurrently with a motion to dismiss. (Docs. 15, 16.) As a result of the motion to dismiss, the parties stipulated to extend Plaintiffs' time to amend the complaint, (Doc. 18), which was filed on January 6, 2023. (Doc. 23.) The Court construed the parties' stipulation as an agreement to deny as moot the motion to dismiss upon the filing of Plaintiffs' First Amended Complaint. (Doc. 27.) Quest filed a second motion to dismiss on February 28, 2023, (Doc. 34), which remains pending before the Court. None of this activity affects the motion to transfer venue apart from the FAC becoming the operative complaint.

the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart*, 487 U.S. at 33.

Accordingly, when a section 1404(a) transfer motion is premised on a forum selection clause, the analysis is adjusted and courts "should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 571 U.S. at 62; *see also Stewart*, 487 U.S. at 33 ("[A]uthority and prerogative of the federal courts … should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional cases."). Finally, the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1 (1972) "provides guidance regarding the extraordinary circumstances in which a forum-selection clause will not control," including the presence of fraud or overreaching, public policy concerns, or grave difficulty and inconvenience. *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915, 917 (9th Cir. 2019).

### III.   Discussion and Analysis

Quest contends that venue in this district is improper because a forum selection clause contained within the MyQuest Account Terms and Conditions—which a website user must accept to create an account and access MyQuest—requires all disputes related to the use of MyQuest accounts to be resolved in New Jersey. (*See* Doc. 15 at 11-14.) In opposition, Plaintiffs raise two arguments. First, they argue the clause is inapplicable to their claims because the claims are not within the clause's scope. (*See* Doc. 24 at 5-8.) Second, Plaintiffs contend that even if the Court finds the clause applicable, it is unenforceable because it only covers part of the claims. (*Id*. at 8-10.) The Court addresses each argument in turn.

**A.   Plaintiffs' claims fall within the scope of the clause**

Before the Court can decide whether the parties' forum selection clause should be enforced, it must interpret the clause and determine its scope.[3] *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858

---

[3] Another threshold question is whether the clause is mandatory or permissive. *Knight v. Wata, Inc.*, 2022 WL 3574441, at *2 (C.D. Cal. July 27, 2022) ("[D]istrict courts across the country have … recognized that the analysis on a motion to transfer based on a forum-selection clause begins with whether the clause is mandatory

3

1   F.2d 509, 513 (9th Cir. 1988) (explaining that the enforcement of a forum selection clause "necessarily

2   entails interpretation of the clause before it can be enforced"). The rule in the Ninth Circuit is that

3   federal law applies to the interpretation of a forum selection clause. *Id.*; *Yei A. Sun v. Advanced China

4   Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). In applying federal law, courts are guided by

5   "general principles for interpreting contracts." *Sun*, 901 F.3d at 1086 (internal quotation marks

6   omitted).[4] Finally, the Ninth Circuit has found that forum selection clauses "can apply to tort claims

7   where the resolution of such claims requires the interpreting of a contract that includes a forum

8   selection clause." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1083 (E.D. Cal.

9   2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020) (citing *Manetti-Farrow*, 858 F.2d at 513).[5]

---

or permissive."). If a forum selection clause contains mandatory language, it will be enforced. *Koresko v. RealNetworks, Inc.,* 291 F. Supp. 2d 1157, 1161 (E.D. Cal. 2003) (citing *Docksider, Ltd. v. Sea Technology, Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989)). If, on the other hand, the language is non-mandatory, suit may be brought elsewhere. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir. 1987). For a forum selection clause to be mandatory, the language must clearly require exclusive jurisdiction. *Id.* at 77; *see also Saccani Distrib. Co. v. Clean Cause, Inc.*, 2021 WL 3883879, at *5 (E.D. Cal. 2021) ("To be mandatory, a forum selection clause must contain wording suggesting that the parties intended to designate the specified forum as the *exclusive* forum.") (emphasis in original). Quest asserts the clause is mandatory, Plaintiffs do not dispute this, and the Court agrees with Quest. (*See* Doc. 15 at 14.) The forum selection clause states that "[a]ny dispute … *shall* be resolved *exclusively* by … New Jersey." (Doc. 15-1 at 12 [emphasis added].) Because the language of the forum selection clause contains the words "exclusive" and "shall," the Court finds the clause is mandatory. *See, e.g., Koresko*, 291 F. Supp. 2d at 1162-63 (finding mandatory a forum selection clause which stated: "you [Plaintiff] hereby consent to the exclusive jurisdiction of the state and federal courts sitting in the State of Washington"); *Sentz v. Euromarket Designs, Inc.*, 2013 WL 12134047, at *4 (C.D. Cal. Oct. 18, 2013) (finding clause mandatory as it contained "shall" and "exclusive" language); *c.f. Hunt Wesson,* 817 F.2d at 77 (finding clause was permissive where the language did not include the forum having exclusive jurisdiction).

[4] New Jersey law governs the parties' agreement under the choice of law provision contained within the Terms and Conditions. (*See* Doc. 15-1 at 12 ["This Agreement and the resolution of any and all disputes related to this Agreement shall be construed in accordance with the laws of the State of New Jersey."].) However, "the parties do not claim that [New Jersey] law varies from ordinary contract principles." *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 21 (1st Cir. 2011).

[5] The Court recognizes there are differing standards on this issue. In *Sun*, the Ninth Circuit clarified that clauses covering disputes "arising out of" an agreement only apply to disputes "relating to the interpretation and performance of the contract itself." 901 F.3d at 1086. For a dispute to "relate to" an agreement by the terms of a forum selection clause, the Court held the dispute need not grow out of the agreement or require interpretation, but rather, the dispute must reference or have some "logical or causal connection" to the agreement. *Id*. In *Manetti-Farrow*, rather than distinguishing between "arising out of" and "related to" language, the Ninth Circuit separated tort claims from contract claims, holding that a clause may apply to tort claims if "resolution of the claims relates to interpretation of the contract." 858 F.2d at 514. While notable distinctions, *Manetti-Farrow* did not involve an examination of the language and *Sun* did not involve the separation of tort and contract claims. In fact, some of the claims involved in the cases relied on in *Sun* were indeed tort claims. *See* 901 F.3d at 1086 (citing *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 (9th Cir. 2011) (negligence);

4

The forum selection clause at issue, contained in Section 12 of the Terms and Conditions, states that "[a]ny dispute between Quest Diagnostics and You *related to* this Agreement shall be resolved exclusively by the state and federal courts of the State of New Jersey." (Doc. 15-1 at 12 [emphasis added].) Quest contends Plaintiffs' claims are "unquestionably" related to the Terms and Conditions because in order to prevail on their claims, Plaintiffs "must prove that they did not consent to the data collection practices at issue." (Doc. 31 at 7; *see also* Doc. 15 at 14-15.) More specifically, Quest asserts the following:

> [W]hen Plaintiffs agreed to the Account Terms & Conditions, … they agreed to Quest's Privacy Notice and Cookie Notice, which were incorporated by reference. [citation] To adjudicate Plaintiffs' CIPA and CMIA claims, a court will have to interpret and determine the parties' rights and obligations under the Account Terms & Conditions— including whether Plaintiffs' agreement to the Cookie Notice and Privacy Notice incorporated into the "Use of Your Information/Privacy Policy" section is sufficient to establish their consent to the data collection practices at issue.

(Doc. 31 at 8.)

Relying on *Clark-Alonso v. Southwest Airlines Company*, 440 F. Supp. 3d 1089 (N.D. Cal. 2020), Plaintiffs assert that the Terms and Conditions are "entirely untethered" to their claims and as such, there is no nexus required to make the clause applicable. (Doc. 24 at 6-7.) The Court, however, finds the facts in *Clark-Alonso* distinguishable. There, plaintiff enrolled in defendant's frequent flyer program and in so doing, received a copy of the program's "Rules and Regulations." *Clark-Alonso*, 440 F. Supp. 3d at 1091. Plaintiff alleged he later called the program's customer service number, and the ensuing telephone conversation was recorded without his knowledge or consent. *Id*. at 1092. The court noted that the forum selection clause contained in the Rules and Regulations applied to "[a]ny and all matters arising out of or relating to the [Rules and Regulations] and/or the subject matter hereof." *Id*. at 1094.

The Court concluded plaintiff's claim did not "arise out of" the frequent flyer program's Rules and Regulations because it would not require interpretation of the Rules and Regulations or "a

---

*Huffington v. T.C. Grp., LLC*, 637 F.3d 18 (1st Cir. 2011) (negligent misrepresentation)). Nonetheless, the Court finds Plaintiffs' claims fall within the scope of the clause under both *Sun* and *Manetti-Farrow*.

5

determination of whether plaintiff or defendant has performed under the Rules and Regulations." *Clark-Alonso*, 440 F. Supp. 3d at 1094. It also concluded the claim did not "relate to" the Rules and Regulations because the claim did not "reference" or have a "logical or causal connection" to them. *Id*. (quoting *Sun*, 901 F. 3d at 1086-87).[6]

Notably, in *Clark-Alonso*, there was no assertion or indication that plaintiff's claim referenced—even indirectly—the Rules and Regulations or that any provision of the Rules and Regulations were pertinent to plaintiff's claim, requiring the court's interpretation. *See* 440 F. Supp. 3d at 1094. In contrast, Plaintiffs' argument is contradicted by the FAC, wherein Plaintiffs allege they created MyQuest accounts and in navigating Quest's websites, Quest violated their rights under CIPA and CMIA by intercepting and transmitting information without their consent.[7] (*See generally* Doc. 23.) They do not dispute that they were required to, and did, accept the Terms and Conditions to create their MyQuest accounts. (*See* Doc. 24.) Nor do they dispute Quest's assertion that the relevant privacy policies—including the Cookies Notice referenced directly in the FAC (*see* Doc. 23, ¶ 41, figs. 12 & 13)—were incorporated into Section 4 of the Terms and Conditions, titled "Use of Your Information/Privacy Policy." (*See* Doc. 24; Doc. 15 at 14-15.)

Because the Terms and Conditions disclose the data collection practices challenged and referenced by Plaintiffs, and because Plaintiffs' claims will require interpretation of the Terms and Conditions in determining the issue of consent, the Court finds the claims are covered by the forum selection clause. Thus, having interpreted the scope of the clause, the Court will proceed to

---

[6] In coming to this conclusion, the court rejected defendant's argument that "but for plaintiff's membership in the [program], he would not have called the [program's] phone number." *Clark-Alonso*, 440 F. Supp. 3d at 1095. For clarification, the Court notes that the following findings are not based on Quest's argument that the claims and agreement are connected simply because but for agreeing to the Terms and Conditions, Plaintiffs would not have had access to MyQuest. (*See* Doc. 31 at 7 ["Plaintiffs were able to access and navigate their MyQuest accounts solely by virtue of their agreement to the Account Terms & Conditions, including the forum-selection clause. Thus, their claims have a logical and causal connection to the agreement."].)

[7] CIPA applies, in relevant part, to any person "who willfully and *without the consent* of all parties to the communication … attempts…to learn the contents or meaning of any … communication … or who uses … any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do …." Cal. Pen. Code § 631(a) (emphasis added). CMIA prohibits a health care provider from disclosing "medical information regarding a patient … without first obtaining an authorization," and further provides that "[e]xcept to the extent expressly authorized by a patient … a provider of health care … shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient." Cal. Civ. Code § 56.10(a), (d).

6

enforceability. *See Manetti-Farrow*, 858 F.2d at 513.

### B. The clause is enforceable

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In cases not involving a forum selection clause, "a district court considering a § 1404(a) motion must evaluate both the private interests of the parties and public-interest considerations..." *Atl. Marine*, 571 U.S. at 51, 62.[8] However, when the transfer motion is premised on a forum selection clause, as here, the section 1404(a) analysis is adjusted in three ways. *Id*. at 63. First, the plaintiff's choice of forum merits no weight and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Second, a section 1404(a) transfer will not carry with it the original venue's choice-of-law rules. *Id*. at 64. Third, arguments about the parties' private interests should not be considered and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. Thus, while the Court may consider the public interest factors,[9] they will "rarely defeat a transfer motion" and the "practical result is that forum-selection clauses should control except in unusual cases." *Id*. In sum, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id*. at 62; *see also id.* at 60 ("[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'") (quoting *Stewart*, 487 U.S. at 33).

#### 1. Public interest factors

Plaintiffs, who bear the burden of showing transfer is unwarranted, have failed to address any of the public interest factors, let alone demonstrate that the factors weigh against transfer. In other words, they have not argued or established that New Jersey would incur administrative difficulties,

---

[8] Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Atl. Marine*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)).

[9] Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 63 n.6.

7

that New Jersey cannot adjudicate their claims, or that New Jersey lacks an interest in fair adjudication. It is not enough that California may have a general interest in protecting its citizens. Plaintiffs' selection of this forum merits no weight; the circumstances must be extraordinary. *See Atl. Marine*, 571 U.S. at 64.

### 2. Reasonableness

Forum selection clauses are prima facie valid and should be enforced unless the party seeking to defeat the clause makes a "strong showing" that enforcement would be unreasonable. *Bremen*, 407 U.S. at 10, 15; *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) ("The party challenging the forum selection clause bears a 'heavy burden' of establishing the existence of … grounds for rejecting its enforcement.") (quoting *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), *as amended* (Mar. 10, 1998)).[10] A court will find enforcement unreasonable if: "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citing *Bremen*, 407 U.S. at 12-13, 15, 18; *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 591 (1991)) (internal citations and quotation marks omitted).

Although Plaintiffs concede forum selection clauses should be enforced absent exceptional circumstances, (*see* Doc. 24 at 8), they do not allege fraud, undue influence, or overweening bargaining power. (*See generally* Doc. 23.) They don't argue that litigating this matter in New Jersey would be "manifestly and gravely" difficult as to deprive them of their day in court. *Bremen*, 407 U.S. at 16, 19. Finally, Plaintiffs do not identify any public policy concerns that would require the action to

---

[10] Though what is considered unusual, extraordinary, exceptional, or unreasonable was not addressed in *Atlantic Marine*, the Ninth Circuit has routinely held that *Bremen* is instructive in determining the validity and enforceability of a forum selection clause. *See Gemini*, 931 F.3d at 915 (holding that *Bremen* remains good law in determining what constitutes an "exceptional reason" or "extraordinary circumstances" under *Atlantic Marine*); *Advanced China Healthcare, Inc.*, 901 F.3d at 1088 (explaining that *Atlantic Marine* provides "little guidance" as to what constitutes "exceptional" or "extraordinary circumstances" and turning to the guidance of *Bremen* in making that determination).

8

1 remain in the Eastern District of California.

2     Plaintiffs argue instead that the clause should not be enforced because "numerous" courts have held that a forum selection clause is unreasonable "where it only covers a portion of the claims or allegations at issue." (Doc. 24 at 8.) Plaintiffs assert that they seek to represent two classes: one concerning the General Website and one concerning the MyQuest website. (*Id*. at 9.) However, the cited portions of the FAC to do not support that assertion. Based on their own allegations, Plaintiffs seek to represent a class of persons who have navigated and accessed either website. (*See* Doc. 23, ¶ 44 ["Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in California who have navigated and accessed questdiagnostics.com (the "General Website") and/or myquest.questdiagnostics.com (the "Patient-Protected Website").].)

    Plaintiffs also assert that by the express language of the Terms and Conditions—that Quest has "other Web sites and services that may be covered by different terms and conditions of use"—this somehow leaves "the potential for piecemeal litigation that needlessly drains judicial resources." (Doc. 24 at 9 [quoting Doc. 15-1 at 9].) However, Plaintiffs make no showing that claims related to navigating and accessing the General Website are not covered by a forum selection clause, or that the General Website's Terms and Conditions contain a forum selection clause that conflicts with MyQuest's clause.

    For this reason, the cases Plaintiffs rely upon are not instructive. *See Primary Color Sys. Corp. v. Agfa Corp.*, 2017 WL 8220729, at *6-7 (C.D. Cal. July 13, 2017) (declining to transfer action with two conflicting forum selection clauses); *Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 468 (E.D. Pa. 2013) (refusing to transfer where some claims were uncovered by clause and some claims were covered by conflicting clauses); *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986) (affirming district court decision that enforcement of forum selection clause was unreasonable because claims were broader in scope than clause); *Jones v. Custom Truck & Equip., LLC*, 2011 WL 250997, at *5 (E.D. Va. Jan. 25, 2011) (declining to enforce two conflicting clauses); *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276, at *3 (N.D. Cal. Nov. 1, 2007) (same); *Samuels v. Medytox Sols., Inc.*, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014) (same). In sum, Plaintiffs have not met their "heavy burden" of establishing

that the forum selection clause is unreasonable or that the public factors weigh against transferring the action to the District of New Jersey. *Jones*, 211 F.3d at 497. Thus, it must be enforced.

### C. Motion to Dismiss

In light of the Court's decision, the Court declines to consider Quest's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed on February 28, 2023. (Doc. 34.)

## IV. Conclusion and Order

Because Plaintiffs have not met their burden of showing that transfer is unwarranted, transfer to the District of New Jersey is appropriate. *See Atl. Marine*, 571 U.S. at 63. Based upon the foregoing, the Court **ORDERS**:

1. Defendant Quest's motion to transfer venue (Doc. 15) is **GRANTED**.
2. The matter is **TRANSFERRED** to the United States District Court for the District of New Jersey.

IT IS SO ORDERED.

Dated:   **September 22, 2023**                               _____
                                                              UNITED STATES DISTRICT JUDGE