**FAEGRE DRINKER BIDDLE & REATH LLP**
Matthew J. Fedor
Christian J. Clark
W. Joshua Lattimore
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
(973) 360-9831 (fax)
Matthew.Fedor@faegredrinker.com
Christian.Clark@faegredrinker.com
Joshua.Lattimore@faegredrinker.com

*Attorneys for Defendant*
*Quest Diagnostics Incorporated*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANGELA COLE and BEATRICE ROCHE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS, INC.,<br><br>Defendant. | Case No. 2:23-cv-20647<br><br>Civil Action<br><br>(Document Filed Electronically)<br><br>**Motion Day**: August 19, 2024<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, FOR
CERTIFICATION OF INTERLOCUTORY APPEAL**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .......................................................................................2

STANDARD OF REVIEW ......................................................................................4

ARGUMENT .............................................................................................................5

    I.     The Court Overlooked Controlling Third Circuit Authority And Reconsideration Is Necessary To Correct A Clear Error Of Law ........5

          A.     Quest cannot be liable under CIPA for aiding and assisting an "interception" or "eavesdropping" because, under Third Circuit law, Facebook was a "party" to the communications at issue. ............................................................5

          B.     The California decision that this Court relied on is contrary to the Third Circuit's decision in *Google Cookie*. ....................................................................................9

          C.     The Third Circuit's decision in *Popa* does not apply, and *Google Cookie* is not distinguishable. ......................................11

    II.    In The Alternative, The Court Should Certify This Issue For An Immediate Interlocutory Appeal .......................................................14

CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Barbee v. Amira Nature Foods, Ltd.*,
   2024 WL 626302 (D.N.J. Feb. 14, 2024) ............................................................. 5

*Bedoya v. Am. Eagle Express*,
   2017 WL 4330351 (D.N.J. Sept. 29, 2017) ....................................................... 14

*Bricklayers & Allied Craftworkers Local 5 v. Chanree Const. Co.*,
   2013 WL 6528776 (D.N.J. Dec. 12, 2013) (Wolfson, J.) .................................... 8

*Casco v. Ponzios RD, Inc.*,
   2018 WL 2002787 (D.N.J. Apr. 30, 2018) (Kugler, J.) ....................................... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ......................................................................... 5, 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015) .......................................................................*passim*

*Juice Entm't, LLC v. Live Nation Entm't, Inc.*,
   353 F. Supp. 3d 309 (D.N.J. 2018) ................................................................... 15

*Lupian v. Joseph Cory Holdings, LLC*,
   2017 WL 1483313 (D.N.J. Apr. 24, 2017) ................................................. 14, 15

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999) ............................................................................... 4

*Moledina v. Marriot Int'l*,
   635 F. Supp. 3d 941 (C.D. Cal. 2022) .............................................................. 10

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................................. 12

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) ......................................................................... 11, 12

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ......................................... 9, 12, 15

*Ribas v. Clark*,
   696 P.2d 637 (Cal. 1985) ................................................................................ 12

*Sundesa, LLC v. Tejarah Int'l Inc.*,
   2020 WL 6779105 (D.N.J. Nov. 17, 2020) (Martini, J.) ...................................... 4

**Statutes, Rules & Regulations**

28 U.S.C. § 1292(b) ............................................................................................ 2, 14

Rule 12(b)(6) ............................................................................................................ 1

Cal. Pen. Code § 631(a) ("CIPA") ................................................................. *passim*

The Federal Wiretap Act .............................................................................. *passim*

Pennsylvania's Wiretapping and Electronic Surveillance Control Act ................ 11

Defendant Quest Diagnostics Incorporated respectfully moves for reconsideration of part of this Court's July 2, 2024 Opinion and Order denying in part and granting in part Quest's Rule 12(b)(6) motion to dismiss Plaintiffs' claims under Section 631 of the California Invasion of Privacy Act ("CIPA").

## **PRELIMINARY STATEMENT**

This case involves the "Facebook Tracking Pixel," a website analytics tool that uses internet "cookies" to collect data regarding user activity on websites. Plaintiffs allege that the use of the Pixel on websites owned by Quest enabled Facebook to improperly collect data regarding Plaintiffs' use of Quest's websites. Plaintiffs' theory is that Quest's use of the Pixel violated CIPA because it "aided" and "assisted" Facebook's unlawful "interception" or "eavesdropping" of Plaintiffs' internet communications with Quest.

The Court denied Quest's motion to dismiss Plaintiffs' CIPA claims, holding in part that Facebook was not a "party" to the internet communications at issue—even though Plaintiffs have alleged that the communications Facebook purportedly "intercepted" were sent *from* Plaintiffs' computers *directly to Facebook—not* to Quest. Respectfully, the Court overlooked controlling law from the Third Circuit that is directly on point and requires the opposite conclusion and result.

Specifically, in *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015), the Third Circuit affirmed dismissal of CIPA

1

and federal Wiretap Act claims in a case involving cookie tracking technology similar to the Pixel. The Third Circuit held unequivocally that "[i]f users' browsers directly communicate with the [alleged interceptors] about the webpages they are visiting . . . then there is no need for the [alleged interceptors] to acquire that information from transmissions to which they are not a party." *Id*. at 140-41. Because the alleged interceptors "were parties to any communications that they acquired," there was no unlawful interception or eavesdropping, and no violation of CIPA or the Wiretap Act. *Id*. at 140-43, 145, 152. Notably, the Third Circuit reached this conclusion even though the plaintiffs alleged that they had not consented to sending communications to Google and that their information was sent "surreptitiously"—just like Plaintiffs allege here. *Id.* at 143.

Quest relied on *Google Cookie* in its motion to dismiss. However, the Court did not discuss, distinguish, or cite *Google Cookie* in its Opinion. Respectfully, the outcome in *Google Cookie* and the Third Circuit's reasoning cannot be squared with the outcome here. As explained below, reconsideration is warranted and Plaintiffs' CIPA claims should be dismissed. In the alternative, the Court should certify this issue for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

<u>STATEMENT OF FACTS</u>

Quest is a leading provider of diagnostic services, providing clinical laboratory testing to millions of customers. First Am. Compl. ("FAC") ¶ 2. Among

2

the websites Quest operates are www.questdiagnostics.com (the "General Website"), which is accessible to the public, and myquest.questdiagnostics.com ("MyQuest"), which requires users to login via an account. *Id.* ¶ 1.[1] Plaintiffs are California residents who are Facebook users. *Id.* ¶¶ 4-5. Plaintiffs allege that when they visited the General Website and MyQuest in connection with accessing diagnostic test results, Facebook unlawfully intercepted and eavesdropped on their communications with Quest. *Id.*

Understanding the technical nuances of the internet communications at issue and how the Pixel works is important to understanding why reconsideration is warranted here. When a user navigates to Quest's websites, the user's internet browser sends what is known as "a GET request" to Quest's server. *Id.* ¶¶ 16-17. The GET request "request[s] that [Quest's] server . . . load the particular webpage" Uniform Resource Locator ("URL") on the user's browser. *Id.* ¶¶ 15, 17.

This process of accessing a website involves a communication directly between the user's browser (here, Plaintiffs) and the host website's server (here, Quest). If this was all that happened and Facebook somehow intercepted or eavesdropped on this direct communication between Plaintiffs and Quest while it was in transit, there might be a CIPA issue. But this is not what Plaintiffs allege happened here.

---

[1] Plaintiffs refer to MyQuest as the "Patient Protected Website." FAC ¶ 1.

3

Instead, Plaintiffs allege that when users access a website that has integrated the Facebook Pixel, "Facebook's software script surreptitiously directs the ***user's*** browser to **send a *separate message*** to Facebook's servers." *Id*. ¶ 16 (emphases added). "This ***second*, secret**" communication consists of (1) "the original GET request sent to the host website"—*i.e.*, a "duplicate" copy of the communication between Plaintiffs and Quest—***plus*** (2) "additional data that the Pixel is configured to collect." *Id*. ¶¶ 16-17, 27-29 (emphasis added).

These "second"—and "separate"—communications from Plaintiffs' computers to Facebook are what form the basis of Plaintiffs' CIPA claims here. Plaintiffs allege that Facebook's receipt of *these* communications constitutes an unlawful interception of Plaintiffs' communications with Quest and eavesdropping under CIPA. *Id*. ¶¶ 16-17, 27-29, 59-60. According to Plaintiffs, Quest allegedly violated Section 631 of CIPA by installing the Pixel, which aided and assisted Facebook's unlawful interception and eavesdropping. *Id*.

## STANDARD OF REVIEW

A motion for reconsideration should be granted if it "is necessary to correct a clear error of law or prevent manifest injustice." *Sundesa, LLC v. Tejarah Int'l Inc.*, 2020 WL 6779105, at *1 (D.N.J. Nov. 17, 2020) (Martini, J.) (cleaned up); *see also Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) ("purpose" of reconsideration "is to correct manifest errors of law") (quote

and citation omitted)). A decision should be reconsidered if "controlling decisions of law were presented to the court but were overlooked." *Barbee v. Amira Nature Foods, Ltd.*, 2024 WL 626302, at *2, *10 (D.N.J. Feb. 14, 2024) (cleaned up).

## ARGUMENT

**I. THE COURT OVERLOOKED CONTROLLING THIRD CIRCUIT AUTHORITY AND RECONSIDERATION IS NECESSARY TO CORRECT A CLEAR ERROR OF LAW**

CIPA applies to someone "who willfully and without the consent of all parties to the communication . . . attempts . . . to learn the contents or meaning of any . . . communication while the same is in transit." Cal. Pen. Code § 631(a). Like the federal Wiretap Act, CIPA "contain[s] an exemption from liability for a person who is a 'party' to the communication" at issue. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (citing *Google Cookie*, 806 F.3d at 152). As discussed below, in denying Quest's motion to dismiss Plaintiffs' CIPA claims, the Court overlooked controlling Third Circuit authority on the "party exemption" that requires dismissal of Plaintiffs' CIPA claims here.

**A. Quest cannot be liable under CIPA for aiding and assisting an "interception" or "eavesdropping" because, under Third Circuit law, Facebook was a "party" to the communications at issue.**

In *Google Cookie*, the Third Circuit previously addressed an internet tracking cookies dispute that involved similar internet communications as the ones at issue here. *See* 806 F.3d at 140-41. The Court held that no "eavesdropping" occurred in violation of Section 631 of CIPA and the federal Wiretap Act because

5

the party in Facebook's same position was a "party" to and the "intended recipient" of the communications at issue. *Id.* at 140-43, 152. Under *Google Cookie*, Plaintiffs' CIPA claims here fail as a matter of law.

In *Google Cookie*, the plaintiffs sued various internet advertisers for allegedly violating CIPA and the Wiretap Act by using "third-party web tracking . . . to record information that [the plaintiffs] exchanged with first-party websites." *Id*. at 130, 140. Like Plaintiffs allege here, the plaintiffs in *Google Cookie* alleged that "upon receiving a GET request from a user seeking to display a particular webpage, the server for that webpage will subsequently respond . . . *instructing the [user's] browser to send a GET request to the third-party company* charged with serving the advertisements for that particular webpage." *Id*. at 130 (cleaned up) (emphasis added); *cf.* FAC ¶¶ 16-17. This second, separate communication occurred via the use of "cookies on web browsers," and led to the plaintiffs receiving targeted advertising—similar to what Plaintiffs allege happened with Facebook here. *Google Cookie*, 806 F.3d at 141; *cf.* FAC ¶¶ 16-17, 38-40.

After engaging in a detailed analysis of the nature of the communications at issue, the Third Circuit held that "**[i]f users' browsers *directly* communicate with the defendants about the webpages they are visiting**—as the complaint pleads with particularity—**then there is no need for the defendants to acquire that information from transmissions to which they are not a party**." *Google Cookie*,

6

806 F.3d at 140-41 (emphases added). The Court observed that "[h]ere, the operative allegations of the complaint support only the conclusion that the defendants acquired the plaintiffs' internet history information ***by way of GET requests that the plaintiffs sent directly to the defendant***s." *Id.* at 142 (emphasis added). Because Google and the other defendants "were parties to any communications that they acquired" and "were the intended recipients of the GET requests," the Court held that there was no unlawful interception or eavesdropping, and thus no violation of the Wiretap Act or CIPA.[2] *Id*. at 140-45, 152.

    Like in *Google Cookie*, Plaintiffs' allegations here make clear that the communications they claim were intercepted are *not* direct communications between Plaintiffs and Quest (*i.e.*, the host website). Instead, the communications at issue are directly between Plaintiffs and Facebook (*i.e.*, the advertising company). Indeed, Plaintiffs allege that *their* browsers sent the disputed communications *directly to Facebook* as "*separate* message[s]" and these "*second, secret*" communications contain a "duplicate" copy of "the original GET request

---

[2] Although the detailed analysis of this point appears in the section discussing the Wiretap Act, the Court held that Google also was a "party" to the disputed communications under CIPA. *Google Cookie*, 806 F.3d at 152 ("As discussed above, the pleadings demonstrate that Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims. Because § 631 is aimed only at 'eavesdropping, or the secret monitoring of conversations by third parties,' we will affirm the dismissal of the [CIPA] claim for the same reasons we affirm the dismissal of the federal Wiretap Act claim.").

7

sent to [Quest]." FAC ¶¶ 16-17. Under *Google Cookie*, Facebook was a "party" to and the "intended recipient" of these communications and did not engage in unlawful "interception" or "eavesdropping" of Plaintiffs' communications with Quest under CIPA as a matter of law. *Google Cookie*, 806 F.3d at 140-43, 152. Since Facebook did not engage in an unlawful "interception" or "eavesdropping," Quest could not have violated CIPA by "aiding and assisting Facebook's eavesdropping." FAC ¶¶ 59-60. Thus, Plaintiffs' CIPA claims must be dismissed.

Quest argued in its motion to dismiss that Plaintiffs' CIPA claims should be dismissed because Facebook was a "party" to the communications at issue under *Google Cookie*. *See* Opening Br. (ECF No. 51-1) at pp. 24-27; Reply Br. (ECF No. 59) at pp. 6-8. In denying Quest's motion, the Court overlooked *Google Cookie*, as it did not discuss, distinguish, or cite it.

Respectfully, *Google Cookie* controls and reconsideration is necessary to correct a clear error of law. Courts in this District routinely grant motions for reconsideration when they have overlooked controlling Third Circuit precedent. *See, e.g.*, *Casco v. Ponzios RD, Inc.*, 2018 WL 2002787, at *2-3 (D.N.J. Apr. 30, 2018) ("We overlooked that [Third Circuit] decision, and correct that error today.") (Kugler, J.); *Bricklayers & Allied Craftworkers Local 5 v. Chanree Const. Co.*, 2013 WL 6528776, at *2-3 (D.N.J. Dec. 12, 2013) (Wolfson, J.) (similar).

8

    **B.    The California decision that this Court relied on is contrary to the Third Circuit's decision in *Google Cookie*.**

In its Opinion, this Court agreed with Plaintiffs' argument that Facebook was not a "party" to the disputed communications, reasoning that the second, separate communication from Plaintiffs to Facebook "occurred after the initiation by Plaintiffs' click" to access Quest's website and Plaintiffs "did not consent to sending a separate message to Facebook, [were] generally unaware of doing so, and had no control over that process." Slip Op. (ECF No. 60) at pp. 5-6. The Court relied on *Revitch v. New Moosejaw, LLC*, which held "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication." 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). According to the Court, to rule otherwise "would undermine the protections intended by the statute by allowing entities to evade liability simply by structuring their technology to receive communications directly." *See* Slip Op. at pp. 5-6. Respectfully, the Court's reasoning and the Court's reliance on *Revitch* was clear error and cannot be reconciled with the Third Circuit's reasoning and holding in *Google Cookie*.

    Like here, the communications at issue in *Google Cookie* began with a user's simple attempt to access a host website—the host website caused the second communication with the defendant advertisers and the *Google Cookie* plaintiffs did "not discern any separate" communications. *Google Cookie*, 806 F.3d at 130. The *Google Cookie* plaintiffs argued that the party exemption should not apply because

9

the disputed communications occurred "only because of the defendants' surreptitious circumvention of the cookie blockers," the point being, "that, though the plaintiffs sent the GET requests to the defendants voluntarily, they were induced to do so by deceit." *Id*. at 143. The Third Circuit squarely rejected this argument, reasoning "we do not agree that a deceit upon the sender affects the presumptive non-liability of parties" to the communication because "[i]n the context of the statute, a party to the conversation is one who takes part in the conversation. There is no statutory language indicating this excludes intended recipients who procured their entrance to a conversation through a fraud in the inducement." *Id*. (cleaned up).

In determining if the party exemption applies, all that matters under *Google Cookie* is whether the alleged interceptor is a direct party to the communications at issue. Critically, under *Google Cookie* it does not matter *how* the alleged interceptor becomes a direct party to the communication—including whether there is lack of consent, awareness, or control by a plaintiff.[3] *Id*. at 143-44 ("It is not unimaginable" the law "would give legal effect to the fraudulent participation of a

---

[3] Besides the analysis in *Google Cookie*, another reason the concept of "consent" is not relevant to determining whether the party exemption applies is that lack of consent is a separate element of a CIPA claim, as this Court found. *See* Slip Op. at 5; *see also Moledina v. Marriot Int'l*, 635 F. Supp. 3d 941, 952 (C.D. Cal. 2022) ("Consent is an express element of a claim under [CIPA]").

10

party to a conversation. It is, after all, a *wiretapping* statute" . . . and "just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping.").

The Third Circuit's reasoning and ultimate holding in *Google Cookie* is contrary to this Court's reasoning and holding in denying Quest's motion to dismiss. The Court acknowledged in its Opinion that Facebook received the disputed communications directly and that they were "a separate message." *See* Slip. Op. at 5-6. Under *Google Cookie*, Facebook was a "party" to and the intended recipient of these communications, and there was no interception or eavesdropping under CIPA as a matter of law. Accordingly, reconsideration is warranted.

    **C.    The Third Circuit's decision in *Popa* does not apply, and *Google Cookie* is not distinguishable.**

Quest expects Plaintiffs will (again) argue that this Court should follow the Third Circuit's decision in *Popa v. Harriet Carter Gifts, Inc.*, which held that a third-party advertiser in a similar posture as Facebook is here could not avoid liability under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") "merely by showing that [plaintiff] unknowingly communicated directly with [the third-party advertiser's] servers." 52 F.4th 121, 124, 129 (3d Cir. 2022). This argument fails because the *Popa* Court found that WESCA was fundamentally different from the Wiretap Act and CIPA as to the party exemption. *Id.* at 129 n.6 ("the Federal Wiretap Act—unlike the WESCA—has an explicit direct-party exemption. So we reached a different conclusion in [*Google Cookie*

11

and *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)] by applying that exemption."). As a result, *Popa* does not apply here and this Court must follow *Google Cookie*, which specifically interpreted CIPA's party exemption and applied it to the types of internet communications at issue here.

Plaintiffs previously argued that this Court should follow *Popa* instead of *Google Cookie* because CIPA lacks an "explicit" party exemption, but this too lacks merit. *See* Pls.' Opp. to MTD (ECF No. 54) at 14 & n.6. Section 631 of CIPA applies only to "eavesdropping, or the secret monitoring of conversations *by third parties*." *Google Cookie*, 806 F.3d at 152 (quoting *Ribas v. Clark*, 696 P.2d 637, 640 (Cal. 1985)) (emphasis added). "Both statutes [the Wiretap Act and CIPA] contain an exemption from liability for a person who is a 'party' to the communication." *Facebook*, 956 F.3d at 607. And it is well settled that "Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *Id.* (citing *Google Cookie*, 806 F.3d at 152).

Relatedly, any California decisions that Plaintiffs try to rely on for a contrary interpretation of the party exemption are unpersuasive and inapplicable. This is because the Ninth Circuit's interpretation of the party exemption in *Facebook* is directly at odds with the Third Circuit's "contrary" interpretation in *Google Cookie*. *See Facebook*, 956 F.3d at 607-08 (rejecting *Google Cookie*'s interpretation of party exemption and, similar to *Revitch*, finding that

12

"simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception"). Of course, this Court is bound to follow the Third Circuit's interpretation of the party exemption.

Finally, Plaintiffs cannot distinguish *Google Cookie*. Any technological nuances in how the different cookies work are irrelevant. What matters is: (1) *factually*, the communications Facebook allegedly intercepted and eavesdropped on were *separate* communications Plaintiffs sent directly to Facebook; and (2) *legally*, the Third Circuit plainly held in *Google Cookie* that "[i]f users' browsers *directly* communicate with the defendants about the webpages they are visiting . . . then there is no need for the defendants to acquire that information from transmissions to which they are not a party" and no unlawful interception or eavesdropping under CIPA. 806 F.3d at 140-43, 152.

The parallels between this case and *Google Cookie* are undeniable:

- The plaintiffs in both cases claim their website activity was tracked by advertising companies when they accessed first-party websites.

- Both cases involve cookies that caused the plaintiffs' browsers to send GET requests directly to the advertising companies via a separate communication that enabled the tracking of the user activity.

- These *separate* communications directly between the plaintiffs and the advertising companies are the communications that allegedly were "intercepted" and "eavesdropped" on in violation of CIPA.

- The plaintiffs in both cases allege that these separate communications occurred "surreptitiously" and without their consent or knowledge.

13

Simply put, *Google Cookie* applies, and the outcome here should be the same as in *Google Cookie*. The Court should grant reconsideration and dismiss Plaintiffs' CIPA claims under the party exemption. *See id.*

## II.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THIS ISSUE FOR AN IMMEDIATE INTERLOCUTORY APPEAL

If the Court does not grant reconsideration, in the alternative the Court should certify the issue of whether Plaintiffs' CIPA claims are barred under the party exemption as set forth in *Google Cookie* for immediate interlocutory appeal. A court may certify an interlocutory appeal of an order where (1) the "order involves a controlling question of law"; (2) "as to which there is substantial grounds for difference of opinion"; and (3) the appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Bedoya v. Am. Eagle Express*, 2017 WL 4330351, at *1 (D.N.J. Sept. 29, 2017).

First, the Court's ruling on the party exemption involves a controlling question of law. "A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Lupian v. Joseph Cory Holdings, LLC*, 2017 WL 1483313, at *2 (D.N.J. Apr. 24, 2017). If *Google Cookie* applies here, as discussed *supra*, then the disputed communications were not "intercepted" and Plaintiffs' CIPA claims fail as a matter of law. The Court's contrary holding thus would constitute reversible error on appeal. *See id.*

14

Second, for the reasons discussed at length above, there is substantial ground for difference of opinion as to the correctness of the Court's interpretation and application of the party exemption. "A substantial ground for difference of opinion exists when there is genuine doubt or conflicting precedent as to the correct legal standard." *Juice Entm't, LLC v. Live Nation Entm't, Inc.*, 353 F. Supp. 3d 309, 313 (D.N.J. 2018). As noted, the Court did not discuss, distinguish, or cite *Google Cookie* in its Opinion. Respectfully, the Court's reasoning and reliance on *Revitch* in finding that the party exemption does not apply cannot be reconciled with the Third Circuit's contrary reasoning and holding in *Google Cookie*.

Third, if appealed immediately, the Third Circuit's decision on the issue would materially advance the ultimate termination of the litigation because it would result in dismissal of Plaintiffs' only remaining claims. "At a practical level, 'saving of time of the district court and of expense to the litigants' are highly relevant factors to consider." *Lupian*, 2017 WL 1483313, at *2.

## **CONCLUSION**

For the foregoing reasons, Quest respectfully requests that the Court grant its motion for reconsideration and dismiss Plaintiffs' CIPA claims. In the alternative, the Court should certify this issue for an immediate interlocutory appeal.

Dated: July 16, 2024         **FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ Matthew J. Fedor*
    Matthew J. Fedor
    Christian J. Clark
    W. Joshua Lattimore

*Attorneys for Defendant*
*Quest Diagnostics Incorporated*